UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTED MEDIA BRANDS, INC.,

Plaintiff,

-v-

UNITED STATES OF AMERICA,

Defendant.

No. 15-CV-9872 (KMK)

<u>OPINION & ORDER</u>

Appearances:

David B. Blair, Esq.
Jeremy Abrams, Esq.
Crowell & Moring LLP
Washington, DC
*Counsel for Plaintiff*

Talia Kraemer, Esq.
Assistant United States Attorney
United States Attorney's Office, S.D.N.Y.
New York, NY
*Counsel for the Government*

KENNETH M. KARAS, District Judge:

Plaintiff Trusted Media Brands, Inc. ("Plaintiff" or "Trusted Media") brings this Action against the United States of America (the "Government") pursuant to the Internal Revenue Code of 1986 (the "Code"), 26 U.S.C. § 6511 et seq., alleging that Plaintiff is entitled to a refund of taxes paid in the amount of $2,148,854. (*See* Compl. ¶ 1 (Dkt. No. 1).)[1] Before the Court is the Government's Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (*See* Dkt. No. 26.) For the reasons to follow, the Motion is granted.

---

[1] On September 28, 2015, Trusted Media changed its name from The Reader's Digest Association, Inc. (*See* Compl. ¶ 5.)

<u>I.  Background</u>

<u>A.  Factual Background</u>

In tax years 1995, 1997, and 2002, each ending on June 30, Plaintiff paid taxes to foreign countries and claimed a foreign tax credit on its returns pursuant to 26 U.S.C. § 901.  (*See* Compl. ¶ 8.)  On its return for the tax year 2002, Plaintiff incurred a net operating loss ("NOL") of $61,172,728.  (*See id.* ¶ 9.)  Plaintiff simultaneously carried back its 2002 NOL to its 1997 tax year pursuant to a then-existing provision of the Code allowing a carryback period of five years. (*See id.* ¶ 10 (citing Job Creation and Worker Assistance Act of 2002, Pub. L. No. 107-147 § 102(a)), 116 Stat. 21 (2002).)  On December 14, 2011, Plaintiff filed an Amended U.S. Corporation Income Tax Return ("Amended Return"), for its tax year ending June 30, 2002. (*See id.* ¶ 11.)  In its Amended Return, Plaintiff changed its election from a foreign tax *credit* to a "*deduction* for its foreign taxes paid or accrued in the 2002 tax year" under 26 U.S.C. § 164(a)(3).  (*Id.* (emphasis added))

As a result of this change, Plaintiff's 2002 NOL increased to $74,458,545.  (*See id.*) Plaintiff then carried back this 2002 NOL to 1997 under 26 U.S.C. § 172(b)(1)(H) and filed an Amended Return for its 1997 tax year "reflecting the increased NOL carryback."  (*Id.* ¶ 12.)  Due to this carryback, Plaintiff's 1997 taxable income was reduced by $13,285,817 and its foreign tax credit limitation pursuant to 26 U.S.C. § 904 decreased.  (*See id.* ¶ 13.)  The decrease in the tax limitation resulted in "foreign tax credits in excess of the credit limitation ('excess foreign tax credits') of $4,646,270" for 1997.  (*Id.* ¶ 13.)  Plaintiff alleges that "[t]hese excess foreign tax credits were available to be carried back and carried forward under the then-existing version of 26 U.S.C. § 904(c)."  (*Id.*)

2

"Plaintiff had $2,148,854 of unused excess foreign tax credit limitation" for the 1995 tax year, prior to the filling of the 2002 Amended Return. (*Id.* ¶ 14.) As a result of the increased NOL for 2002, which Plaintiff carried back to 1997, along with the increased excess foreign tax credit in the 1997 tax year, "the excess foreign tax credit from 1997 was available to be carried back to tax year 1995." (*Id.*) When Plaintiff carried back the foreign tax credit from 1997 to 1995, it resulted in an alleged overpayment of $2,148,854 for 1995. (*See id.* ¶ 15.) Plaintiff therefore filed an Amended Return for 1995, reflecting a claim for a refund of $2,148,854, the amount in dispute in this Action. (*See id.* ¶ 16.)

In July 2012, the Internal Revenue Service (the "IRS") provided Plaintiff "Notices of Proposed Adjustment for tax years 1995, 1997, and 2002, in which it explained that it was disallowing the claims as untimely," and on August 29, 2012, the IRS "proposed a full disallowance of Plaintiff's 1995, 1997, and 2002 claims." (*Id.* ¶¶ 17–18.) On the same day, Plaintiff waived the requirement of an issuance of a formal disallowance. (*See id.* ¶ 19.) Plaintiff filed a protest letter, and the IRS examiner wrote a written rebuttal explaining that the claims were being denied as untimely pursuant to 26 U.S.C. § 6511(d)(3). (*See id.* ¶ 20.) Prior to the expiration of the two-year limitations period to file a refund lawsuit, Plaintiff and the IRS executed an agreement extending the limitations period until December 31, 2015. (*See id.* ¶ 21.) Following an unsuccessful appeal of the IRS' proposal of a full disallowance, a formal notice of disallowance was issued for the 1995, 1997, and 2002 claims. (*See id.* ¶ 22.)

B. Procedural History

Plaintiff filed its Complaint in this Action on December 18, 2015. (*See* Dkt. No. 1.) Pursuant to a scheduling order dated June 23, 2016, (*see* Dkt. No. 23), and a subsequent revision

of that schedule, (*see* Dkt. Nos. 24–25), the Government and Plaintiff filed their briefing on the

instant Motion To Dismiss on October 14, 2016, (*see* Dkt. Nos. 26–31).[2]

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks

omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief

above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from

conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679

("Determining whether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

---

[2] The Government's Motion is dated August 18, 2016 and Plaintiff's opposition is dated September 19, 2016.  (*See* Dkt. Nos. 26–30.)  The Government's reply is dated October 14, 2016.  (*See* Dkt. No. 31.)

sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Additionally, "[i]t is well established in the tax law that an assessment [by the IRS] is entitled to a legal presumption of correctness—a presumption that can help the Government prove its case against a taxpayer in court."  *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002); *see also Albemarle Corp. & Subsidiaries v. United States*, 118 Fed. Cl. 549, 560 (2014) ("In a tax refund case, there is . . . a presumption of the correctness of the findings of the Commissioner of Internal Revenue.").  "Unquestionably the burden of proof is on the taxpayer to

show that the Commissioner's determination is invalid." *Helvering v. Taylor*, 293 U.S. 507, 515 (1935); *see also United States v. Gen. Dynamics Corp.*, 481 U.S. 239, 245 (1987) ("The taxpayer has the burden of proving its entitlement to a deduction.").

B.  Analysis

1.  Credits and Deductions on Foreign Taxes

The starting point in a statutory construction analysis is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (internal quotation marks omitted); *see also Caraco Pharm. Labs., Ltd. v. Novo Nordisk AIS*, 566 U.S. 399, 412 (2012). Pursuant to 26 U.S.C. § 901(a),

> [i]f the taxpayer chooses to have the benefits of this subpart, the tax imposed by this chapter shall, subject to the limitation of [§] 904, be credited with the amounts provided in the applicable paragraph of subsection (b) plus, in the case of a corporation, the taxes deemed to have been paid under [§§] 902 and 960.  Such choice for any taxable year may be made or changed at any time before the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this chapter for such taxable year.  The credit shall not be allowed against any tax treated as a tax not imposed by this chapter under [§] 26(b).

26 U.S.C. § 901(a).  This credit is limited to the amount of foreign taxable income for that year:

> The total amount of the credit taken under [§] 901(a) shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year.

*Id.* § 904(a).  If the taxpayer's foreign tax liability exceeds the credit limit for a given year, the taxpayer may carryback or carryover the amount to reduce its tax liability for a prior or succeeding year:

Any amount by which all taxes paid or accrued to foreign countries or possessions of the United States for any taxable year for which the taxpayer chooses to have the benefits of this subpart exceed the limitation under subsection (a) shall be deemed taxes paid or accrued to foreign countries or possessions of the United States in the first preceding taxable year and in any of the first 10 succeeding taxable years, in that order and to the extent not deemed taxes paid or accrued in a prior taxable year, in the amount by which the limitation under subsection (a) for such preceding or succeeding taxable year exceeds the sum of the taxes paid or accrued to foreign countries or possessions of the United States for such preceding or succeeding taxable year and the amount of the taxes for any taxable year earlier than the current taxable year which shall be deemed to have been paid or accrued in such preceding or subsequent taxable year (whether or not the taxpayer chooses to have the benefits of this subpart with respect to such earlier taxable year). Such amount deemed paid or accrued in any year may be availed of only as a tax credit and not as a deduction and only if the taxpayer for such year chooses to have the benefits of this subpart as to taxes paid or accrued for that year to foreign countries or possessions of the United States.

*Id.* § 904(c). Taxpayers can alternatively choose to deduct foreign taxes from taxable income. *See id.* § 164(a) ("Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued: . . . State and local, and foreign, real property taxes. . . . State and local, and foreign, income, war profits, and excess profits taxes."). If the deductions for a given year exceed the taxpayer's income in that year, the taxpayer has a NOL. *See id.* § 172(c) ("[T]he term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income."). The NOL can then be carried over or carried back to serve as a deduction. *See id.* § 172(a) ("There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year."). If the taxpayer elects to claim a credit for foreign taxes paid, the taxpayer cannot also claim a deduction, and vice versa. *See id.* § 275(a)(4) ("No deduction shall be allowed for the following taxes: . . . Income, war profits, and excess profits taxes imposed by the authority of any foreign country or possession of

the United States if the taxpayer chooses to take to any extent the benefits of [§] 901."); 26

C.F.R. § 1.901-1(h)(2) ("Taxpayers who are denied the credit for taxes for particular taxable

years are the following: . . . A taxpayer who elects to deduct taxes paid or accrued to any foreign

country or possession of the United States ([pursuant to §§] 164 and 275).").  That is, credits and

deductions are mutually exclusive.

### 2.  Refund Claims

Pursuant to § 6511(a) of the Code,

> [a] [c]laim for credit or refund of an overpayment of any tax imposed by this title
> in respect of which tax the taxpayer is required to file a return shall be filed by the
> taxpayer within 3 years from the time the return was filed or 2 years from the time
> the tax was paid, whichever of such periods expires the later . . . .

26 U.S.C. § 6511(a).  Section 6511(d)(3) provides "[s]pecial rules relating to foreign tax credit,"

with subsection 6511(d)(3)(A) creating a "[s]pecial period of limitation with respect to foreign

taxes paid or accrued."  Under § 6511(d)(3)(A),

> [i]f the claim for credit or refund relates to an overpayment attributable to
> any taxes paid or accrued to any foreign country or to any possession of the United
> States for which credit is allowed against the tax imposed by subtitle A in
> accordance with the provisions of [§] 901 . . . , in lieu of the 3-year period of
> limitation prescribed in subsection (a), the period shall be 10 years from the date
> prescribed by law for filing the return for the year in which such taxes were actually
> paid or accrued.

*Id.* § 6511(d)(3)(A).  By contrast, § 6511(d)(2) provides a "[s]pecial period of limitation with

respect to net operating loss or capital loss carrybacks":

> [i]f the claim for credit or refund relates to an overpayment attributable to a
> net operating loss carryback or a capital loss carryback, in lieu of the 3-year period
> of limitation prescribed in subsection (a), the period shall be that period which ends
> 3 years after the time prescribed by law for filing the return (including extensions
> thereof) for the taxable year of the net operating loss or net capital loss which results
> in such carryback, or the period prescribed in subsection (c) in respect of such
> taxable year, whichever expires later.  In the case of such a claim, the amount of
> the credit or refund may exceed the portion of the tax paid within the period

provided in subsection (b)(2) or (c), whichever is applicable, to the extent of the amount of the overpayment attributable to such carryback.

*Id.* § 6511(d)(2)(A). Put simply, under § 6511(d)(3)(A), the taxpayer has 10 years to claim a refund of an overpayment attributable to foreign taxes, while § 6511(d)(2)(A) provides a three-year limitations period to claim a refund from the due date of the return for the year in which the NOL originated.[3]

## C. Timeliness of Plaintiff's Refund Claim

The Government contends that Plaintiff's Complaint should be dismissed for lack of jurisdiction because it was not timely filed. (*See generally* Def.'s Mem. of Law in Supp. of its Mot. To Dismiss the Compl. ("Gov't Mem.") (Dkt. No. 27).) The Government asserts two arguments in support: (1) the 10-year statute of limitations for refund claims in connection with foreign taxes applies only to credits and not deductions; and (2) Plaintiff's overpayment is attributable to its 1997 foreign tax credit carrybacks and not foreign taxes paid in 2002. The Court addresses each argument in turn.

---

[3] Additionally, § 6511 sets a "[l]imitation on allowance of credits and refunds." 26 U.S.C. § 6511(b). If the claim was filed by the taxpayer within three years from the time the return was filed, "the amount of the credit or refund shall not exceed the portion of the tax paid within the period immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." *Id.* § 6511(b)(2)(A). "If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim." *Id.* § 6511(b)(2)(B). With respect to foreign taxes credits, "the amount of the credit or refund may exceed the portion of the tax paid within the period provided in [§ 6511(b)], . . . to the extent of the amount of the overpayment attributable to the allowance of a credit . . . ." *Id.* § 6511(d)(3)(B). For a refund that "relates to an overpayment attributable to a net operating loss carryback," the refund is limited "to the extent of the amount of the overpayment attributable to such carryback." *Id.* § 6511(d)(2)(A).

9

## 1. Special Limitations Periods

The Government contends that the 10-year "limitations period in [§] 6511(d)(3) is not available for [Plaintiff's] 2002 tax year, because that [s]ection only applies when the taxpayer claims a foreign tax credit, not a deduction." (Gov't's Mem. 7.) Plaintiff asserts that its "claim fits squarely within th[e] 10-year statute of limitations" provided in § 6511(d)(3) and reinforced by 26 C.F.R. § 1.901-1(d). (Pl.'s Resp. to Def.'s Mot. To Dismiss ("Pl.'s Resp.") 1 (Dkt. No. 30).)

It is clear that taking a foreign tax credit or a deduction are mutually exclusive elections. That is, once a taxpayer elects to take a foreign tax credit, it cannot also take a deduction. *See* 26 U.S.C. § 275(a)(4) ("No deduction shall be allowed for the following taxes: . . . Income, war profits, and excess profits taxes imposed by the authority of any foreign country or possession of the United States if the taxpayer chooses to take to any extent the benefits of [§] 901."); 26 C.F.R. § 1.901-1(h)(2) ("Taxpayers who are denied the credit for taxes for particular taxable years are the following: . . . A taxpayer who elects to deduct taxes paid or accrued to any foreign country or possession of the United States ([pursuant to §§] 164 and 275).").

Plaintiff contends that both §§ 901(b) and 6511(d)(3) speak to amounts for which foreign tax credits are "*allowed*," a "term . . . best understood as referring to eligibility" or permissibility. (Pl.'s Resp. 16; *see also id.* at 18 ("[T]he use of 'allowed' in [§] 6511(d)(3)(A) does not apply in the 10-year period based on whether deductions or credits are claimed on a return. Instead, it specifies the category of taxes to which an overpayment must relate as those foreign taxes eligible for a foreign tax credit under [§] 901.").) "Because [§] 901 *permits* taxpayers to claim a credit for certain types of taxes, it follows," Plaintiff argues, "that such types of taxes are taxes

for which a credit is *allowed* under [§] 901." (*Id.* at 15 (emphasis added).) *See* 26 U.S.C § 901(a) (titled "Allowance of credit"); *id.* § 901(b) ("[T]he following amounts *shall be allowed* as the credit under subsection (a) . . . ." (emphasis added)). In response, the Government asserts that the term "allowed" connotes "something that is actually *granted*, not just allowable in theory." (Gov't's Mem. 9 (emphasis added).)

The Court agrees that the distinction between a credit that is "allowed," versus one that is "allowable," is significant. "Under [§] 275(a)(4) and the regulations under [§§] 164 and 901, a deduction for foreign taxes paid or accrued is allowable unless and until the foreign tax credit has been claimed with respect to such taxes." IRS Chief Counsel Advisory IRS CCA 201330031 ("2013 IRS CCA"), 2013 WL 3856944, at unnumbered 4 (July 26, 2013). "Similarly, a foreign tax credit is allowable for such taxes unless and until a deduction has been claimed with respect to such taxable year, at which point the credit is not allowed." *Id.*

Treasury Regulation § 301.6511(d)-3, which implements 26 U.S.C. § 6511(d), is titled "Special rules applicable to credit against income tax for foreign taxes," and makes no mention of the application of the 10-year limitations period to deductions:

> (a) Period in which claim may be filed. In the case of an overpayment of income tax *resulting from a credit, allowed under the provisions of [§] 901* or under the provisions of any treaty to which the United States is a party, for taxes paid or accrued to a foreign country or possession of the United States, a claim for credit or refund must be filed by the taxpayer within 10 years from the last date prescribed for filing the return (determined without regard to any extension of time for filing such return) for the taxable year with respect to which the claim is made. Such 10-year period shall be applied in lieu of the 3-year period prescribed in [§] 6511(a).

26 C.F.R. § 301.6511(d)-3 (emphasis added). As noted, the election of "a credit[] allowed under the provisions of [§] 901," *id.*, necessarily precludes the existence of a deduction.

Furthermore, the Court agrees with the Government that the structure of § 6511 contemplates a distinction between rules with respect to net operating loss carrybacks versus foreign tax credits. *Compare* 26 U.S.C. § 6511(d)(2)(A) *with id.* § 6511(d)(3)(A). (*See also* Gov't's Mem. 10 ("[Plaintiff's interpretation of the statute ignores the structure of the statute as a whole, which has distinct provisions for refunds based on foreign tax credits and refunds based on net operating loss carrybacks.").) The Supreme Court has noted that § 6511 "contain[s] highly detailed language with clear time limits." *United States v. Brockamp*, 519 U.S. 347, 353 (1997). The heading of § 6511(d)(3), which reads "Special rules relating to foreign tax credit," is in contrast to § 6511(d)(2), which is titled "Special period of limitation with respect to net operating loss or capital loss carrybacks." Sections 6511(d)(2) and 6511(d)(3) each provides a special limitations period "in lieu of the 3-year period of limitations prescribed in [6511(a)]." *Compare* 26 U.S.C. § 6511(d)(2)(A) ("[T]he period shall be that period which ends 3 years after the time prescribed by law for filing the return . . . for the taxable year of the net operating loss . . . which results in such carryback, or the period prescribed in [§ 6511(c)] in respect of such taxable year, whichever expires later.") *with id.* § 6511(d)(3)(A) ("[T]he period shall be 10 years from the date prescribed by law for filing the return for the year in which such taxes were actually paid or accrued."). Pursuant to these contrasting provisions, "a given overpayment cannot be treated as attributable to both a net operating loss and a foreign tax for purposes of determining the statute of limitations." IRS Chief Counsel Advisory IRS CCA 201517005 ("2015 IRS CCA"), 2015 WL 1872528, at unnumbered 4 (Apr. 24, 2015).

In an IRS Chief Counsel Advisory ("CCA") issued July 26, 2013, the IRS confronted the very question before this Court. While the Court notes that such advice is not binding precedent,

its detailed analysis is both sound and highly instructive.[4]  *See Lehman Bros. Holdings, Inc. v. United States*, No. 10-CV-6200, 2015 WL 2359256, at *5 n.8, *8 (S.D.N.Y. May 8, 2015) (noting certain arguments were "contradicted flatly by the IRS Chief Counsel's interpretation" of a provision of the Code and that the CCA "appears unequivocally to answer th[e] question").

The issue presented in the CCA is

> [w]hether Taxpayer's claim for refund of a Year 1 overpayment is timely under [§] 6511(d)(3)(A) where Taxpayer elected in Year 17 to deduct rather than credit foreign taxes paid or accrued in Year 8, thereby generating an increased net operating loss in Year 8 which Taxpayer carried back to Year 3.  The net operating loss carryback to Year 3 resulted in an increase in foreign taxes paid or accrued in Tear 3, which Taxpayer sought to carry back and credit against its U.S. tax for Year 1.

2013 IRS CCA, at unnumbered 2.[5]  The CCA definitively concludes that "[§] 6511(d)(3)(A) does not apply to refund claims based on *deductions* for creditable foreign taxes paid or accrued."  *Id.* at unnumbered 3; *see also* 2015 IRS CCA, at unnumbered 1 ("[T]he [10]-year period under [§] 6511(d)(3) is only available for refunds attributable to foreign tax credits; it does not apply to refunds attributable to deductions for credible foreign taxes."); *id.* at unnumbered 3 ("The ten-year period of limitations under [§] 6511(d)(3) applies only to claims based on foreign tax credits allowed under [§] 901, not deductions of foreign tax for which credit is allowable."); Gerald A. Kafka, Rita A. Cavanagh, & Sean M. Akins, Litigation of Federal

---

[4] *See* IRS, Legal Advice Issued by Associate Chief Counsel, https://www.irs.gov/uac/legal-advice-issued-by-associate-chief-counsel ("These documents are legal advice, signed by executives in the National Office of the Office of Chief Counsel and issued to Internal Revenue Service personnel who are national program executives and managers.  They are issued to assist Service personnel in administering their programs by providing authoritative legal opinions on certain matters, such as industry-wide issues.") (last visited Sept. 25, 2017).

[5] The example presented in the CCA corresponds directly to the relevant dates in this Action: Year 1 = 1995; Year 3 = 1997; Year 8 = 2002; Year 17 = 2011.

Civil Tax Controversies, ¶ 13.13 (2017) ("The Service . . . takes the position that a refund claim based on a net operating loss carryback attributable to a timely amendment to the treatment of foreign tax payments must be filed within three years after the due date of the return for the net operating loss tax year.  Stated differently, the statutory period for filing claims for refund for net operating carryback losses and amending the treatment of foreign tax payments do not stack.").

Plaintiff emphasizes that changes implemented in the current version of the Treasury Regulation interpreting § 901 support its argument that there is "a single statute of limitations for the deduction and corresponding refund of taxes attributable to either foreign tax credits or deductions of foreign taxes paid or accrued: 10 years."  (Pl.'s Resp. 12.)  The pre-1987 version of Treasury Regulation stated:

> *Period during which election can be made or changed.*  The taxpayer may, for a particular taxable year, claim the benefits of [§] 901 (or change his choice if previously made) at any time before the expiration of the period prescribed by [§] 6511(a) (or [§] 6511(c) if the period is extended by agreement) for making a claim for credit or refund of the tax imposed . . . for such taxable year.  Such period for such taxable year is determined without regard to the special period prescribed by [§] 6511(d)(3)."

26 C.F.R. § 1.901-1(d) (1987).  In 1987, the Regulation was changed, now providing:

> *Period during which election can be made or changed.*  The taxpayer may, for a particular taxable year, claim the benefits of [§] 901 (*or claim a deduction in lieu of a foreign tax credit*) at any time before the expiration of the period prescribed by *[§] 6511(d)(3)(A)* (or [§] 6511(c) if the period is extended by agreement).

26 C.F.R. § 1.901-1(d) (2011) (emphasis added).  While the Court agrees that the change appears to anticipate the question of whether the limitations period in § 6511(d)(3) applies to both credits and deductions, § 1.901-1(a) of the same Regulation makes clear that the option "to claim a credit, as provided in [§] 901," *id.* § 1.901-1(a), is not available to those who have elected to take a deduction, *see id.* § 1.901-1(h) ("Taxpayers who are denied the credit for taxes for particular

14

taxable years are the following: . . . [a] taxpayer who elects to deduct taxes paid or accrued to any foreign country or possession of the United States (*see* [§§] 164 and 275).").

Furthermore, Plaintiff's interpretation would render the limitation period provided by § 6511(d)(2) unnecessary. "It is . . . a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 489 n.13 (2004) (internal quotation marks omitted); *see also Albemarle*, 118 Fed. Cl. at 575 ("In interpreting the plain meaning of the statute, it is the court's duty, if possible, to give meaning to every clause and word of the statute."). The IRS reasons—and the Court agrees—that the "extended periods under subsections (d)(2) and (d)(3) are mutually exclusive with respect to a given overpayment." 2015 IRS CCA, at unnumbered 1. Because Plaintiff chose to change its election to deduct foreign taxes paid or accrued in 2002, no credit for foreign taxes is allowed. The applicable limitations period for Plaintiff's 2002 refund claim is thus "3 years after the time prescribed by law for filing the return." *See* 26 U.S.C. § 6511(d)(2)(A). Accordingly, Plaintiff's 2011 refund is untimely.

### 2. "Attributable To"

However, even were the Court to find that § 6511(d)(3) applied to both foreign tax credits and deductions and the 10-year statute of limitations applied to Plaintiff's refund claim, the alleged overpayment of $2,148,854 is not attributable to Plaintiff's 2002 refund.

The Parties agree that the phrase "attributable to" should be interpreted in accordance with its ordinary meaning, "due to, caused by, or generated by." (*See* Gov't's Mem. 17; Pl.'s Resp. 20.) *See also Electrolux Holdings, Inc. v. United States*, 491 F.3d 1327, 1331 (Fed. Cir.

2007) ("[T]he special limitations period is available for the . . . tax year [in question] only if [that year's] overpayment was 'due to, caused by, or generated by' a carryback of the [prior year's] . . . capital loss." (emphasis omitted)). However, the Government urges the Court to apply a narrow construction and look to the most "immediate cause" of the $2,148,854 overpayment, while Plaintiff seeks the adoption of an "instigating event" analysis. (*Compare* Gov't's Mem. 17–21 *with* Pl.'s Resp. 20–24.)

In *Electrolux*, in determining "whether the time for filing Electrolux's refund claim . . . [was] governed by 26 U.S.C. § 6511(d)(2)(A)," the Federal Circuit interpreted the relevant statutory language of "attributable to" in the context of "a capital loss carryback." 491 F.3d at 1330.[6] In 1994, Electrolux's predecessor-in-interest realized a capital loss, only a portion of which it deducted on its 1994 tax return. *See id.* at 1328. Following a conclusion that it need not limit its deduction of the capital loss, Electrolux chose "to carry back the unused portion of the . . . capital loss" to 1993, and to "carr[y] forward the remaining amount of the 1994 loss in succession to tax years 1995, 1996, 1997, and 1998." *Id.* at 1328–29. As a result of an agreement between Electrolux and the IRS, the period for filing a refund claim for the 1994 tax year had been extended to June 30, 2000. *Id.* at 1328.

On December 31, 1999, Electrolux filed an amended return seeking (1) a refund for the 1993 year "due to the tax effect of deducting a portion of the 1994 long-term capital loss," and (2) a refund for the 1995 tax year "as a result of an additional deduction . . . , the portion of the unused 1994 capital loss that could be absorbed by additional capital gains in 1995." *Id.* at 1329.

---

[6] In its opposition to the Government's Motion, Plaintiff does not distinguish or even cite to *Electrolux*. (*See* Pl.'s Resp.)

The Commissioner of the IRS disallowed the 1995 refund on the ground that it was untimely and not "attributable to" a carryback of the capital loss from 1994.  *Id.*

The Federal Circuit noted that "[t]he phrase 'attributable to,' though it appears in many provisions of the Internal Revenue Code, is not defined anywhere in the Code and has no special technical meaning under the tax laws."  *Id.* at 1330.  "[W]hen the plain meaning of 'attributable to' [was] applied to § 6511(d)(2)(A) . . . the special limitations period [was] available for the 1995 tax year only if the 1995 overpayment was 'due to, caused by, or generated by' a *carryback* of the 1994 . . . capital loss."  *Id.* at 1331.  The *Electrolux* Court reasoned that "the direct cause of the 1995 overpayment . . . was the capital loss *carryover* to that year," while the "original source" of the carryover was the 1994 capital loss.  *Id.*  Electrolux argued that the overpayment resulted not only from the carryover to 1995, but also the carryback to 1993 of the 1994 capital loss.  *See id.*  The Federal Circuit described Electrolux's view as "a chain of causation leading from the 1994 capital loss (the original source) to the 1995 overpayment (the end result), and the 1993 carryback was a necessary and substantial link in that chain."  *Id.*

Discrediting what it termed Electrolux's "tracing argument," the Federal Circuit agreed with the Government.  *Id.* (internal quotation marks omitted).  While "the amount of the 1995 overpayment could not have been determined until the 1994 capital loss had been carried back to 1993 and the amount to be carried over to 1995 had been computed as the excess of the loss . . . for 1993," the Federal Circuit found it "immaterial that the amount of the overpayment in the

1995 tax year was affected by the process of carrying back the 1994 capital loss before carrying it forward." *Id.* at 1332.[7]

The Court additionally agrees with the IRS that "[t]he narrower reading of 'attributable' found in *Electrolux*, in contrast to the tracing method . . . is consistent with the fact that waivers of sovereign immunity and the associated periods of limitations must be construed strictly in favor of the Government." 2015 IRS CCA, at unnumbered 3. "Under settled principles of sovereign immunity, 'the United States, as sovereign, is immune from suit, save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Dalm*, 494 U.S. 596, 608 (1990) (alteration and some internal quotation marks omitted) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). "When waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity. Accordingly, although [a court] should not construe such a time-bar provision unduly restrictively, [it] must be careful not to interpret it in a manner that would extend the waiver beyond that which Congress intended." *Block v. North Dakota, ex rel. Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 287 (1983) (internal quotation marks omitted). "Since the claim in this case relates to a refund claim, and therefore a waiver of sovereign immunity, the phrase must be construed narrowly to incorporate only the *immediate cause* of the claim." 2015 IRS CCA, at unnumbered 4 (emphasis added).

---

[7] At least one court within the Second Circuit has adopted the "direct cause" reading of § 6511, *Electrolux*, 491 F.3d at 1331, in the context of a refund attributed to a NOL carryback, *see Silipigno v. United States*, No. 15-CV-17, 2017 WL 2973967, at *4, *6 n.7 (N.D.N.Y. July 12, 2017) (noting that for a plaintiff seeking a refund for the 2004 tax year due to a NOL carryback from the 2009 tax year, "[t]he applicable period of limitations to file a claim for refund . . . is provided in 26 U.S.C. § 6511(d)(2).").

18

"To deem [Plaintiff's 1995] refund claim 'attributable' to [2002] . . . would require looking through the attribute directly giving rise to the adjustment to an instigating event in another year." 2013 IRS CCA, at unnumbered 4. Such reasoning would result in a framework where "any refund claim would be timely if it could be traced, however remotely, to any attribute in another year that could directly give rise to a refund claim, even if the statute of limitations had expired with respect to the attribute directly claimed on the amended return." *Id.* Congress did not contemplate such a broad extension of the waiver. *See Block*, 461 U.S. at 287. Accordingly, the Court finds that the refund Plaintiff seeks is attributable to Plaintiff's carryback of foreign tax credits from 1997, and not the 2002 change in election, and therefore, the refund filed in 2011 is untimely.[8]

## III. Conclusion

For the foregoing reasons, the Government's Motion To Dismiss is granted. The Clerk of Court is respectfully requested to terminate the pending Motion, *(see* Dkt. No. 26), enter judgment for the Government, and close this case.

SO ORDERED.

Dated:     September , 2017
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[8] As Plaintiff's claim is time-barred and equitable tolling does not apply, *see Brockamp*, 519 U.S. at 354 (concluding "that Congress did not intend the 'equitable tolling' doctrine to apply to § 6511's time limitations"), the Complaint is dismissed with prejudice.

19